IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERMAINE BUTLER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BTC FOODS, INC., d/b/a BETTY THE | : | NO. 12-0492 |
| CATERER | : | |

## MEMORANDUM

**Restrepo, J.**                                                                                **January 30, 2014**

      Jermaine Butler ("Plaintiff") sues BTC Foods, Inc. ("Defendant") for employment discrimination under federal and state law, stemming from an alleged discriminatory termination. Now before the Court is Defendant's motion for summary judgment on each of Plaintiff's claims. For the reasons below, the motion will be granted, in part.

## I.  FACTS

      Unless otherwise noted, the following facts are undisputed. Plaintiff, a 35-year-old male, worked for Defendant from January of 2007 to January of 2011. Pl.'s Statement of Facts ("SOF") ¶ 1-2, ECF No. 25. Plaintiff began as a part-time "helper," aiding in the food delivery arm of Defendant's business. *Id*. ¶ 2; Pl.'s Dep. 41:19-43:2, ECF No. 25-2. In 2008, Plaintiff was promoted to a full-time shipper and receiver, the position he held until his separation. Pl.'s SOF ¶ 4-6.

      In March of 2010, Plaintiff sustained a double hernia, caused by the "frequent bending, squatting and heavy lifting he was required to perform" for Defendant. *Id*. ¶¶ 7-8. In May of 2011, Plaintiff received surgery to repair the hernia and missed six weeks of work in order to recover. *Id*. ¶¶ 10-11. After returning to work in July of 2011, Plaintiff allegedly continued to have some trouble lifting, bending, squatting, and walking. Pl.'s Dep. 75:7-76:6, 77:11-80:21.

Plaintiff alleges that he never felt more than "80 percent" better, but continued to work anyway, because he had to "provide for [his] family," Pl.'s Dep. 76:11-17. He further alleges that his pain included "sharp pains" when walking or when bending down for extended periods. *Id.* at 80:13-21.

In November of 2010, the fire alarm at Defendant's worksite was triggered. BTC 61-62, ECF No. 27. Plaintiff, allegedly at the instruction of others, and in response to the long-sounding noise, cut the fire alarm in the kitchen, where he worked. *Id.*; Pl.'s Dep. at 90:21-96:7. In response to this problematic decision, Defendant and Plaintiff's union agreed to transfer Plaintiff to another employment site. BTC 61. Plaintiff's transfer did not occur, and in January of 2011 he allegedly informed his direct supervisor, Gerome Markopoulos, that he was continuing to experience pain related to his hernia surgery and would "likely need to take time off again." Pl.'s Decl. ¶ 16. Approximately one week later, Plaintiff's employment with Defendant was terminated. *Id.*; BTC 9.

According to Defendant, Plaintiff voluntarily resigned his position, and there is no dispute that Plaintiff signed a letter of resignation. BTC 9. According to Plaintiff, he was forced or tricked into resigning. Pl.'s Dep. 109:6-115:21. The record contains an "incident report" that Defendant prepared, dated January 25, 2011. BTC 9. The incident report states that because Plaintiff started missing a number of work days for court appearances, Defendant "felt obligated to seek more information as to the nature of all the court appearances." *Id.* As a result, it allegedly discovered that Plaintiff has "a number of serious [criminal] records," that predated his employment. *Id.* Defendant then allegedly reviewed his employment application, which incorrectly stated that he had no convictions within the last ten years. *Id.* Thus, because the

application "clearly state [sic] that any falsification of this application is grounds for dismissal," Defendant had "no other alternative but to release [Plaintiff]." *Id.*

In fact, Plaintiff's employment application is a somewhat peculiar mixture of forthrightness and deception. For example, Plaintiff did indeed check a box noting that he was not convicted of any crimes in the preceding ten years. BTC 10. Yet, at the same time, under "previous employment," Plaintiff provided "S.C.I. Coal Township," where he listed his supervisor as "Redd," and his job description as "cook (prep) / general help." S.C.I. Coal Township stands for the State Correctional Institution at Coal Township, and is in fact the Commonwealth of Pennsylvania correctional institution where Plaintiff was imprisoned. *Id.*

At his deposition, where he apparently was without aid of the employment application that he made four years prior, Plaintiff discussed in detail his application and an alleged conversation with Mr. Markopoulos, which occurred one year after Plaintiff started working for Defendant. In this alleged conversation, Mr. Markopoulos raised the question of what "S.C.I. Coal Township" meant on his employment application. Pl.'s Dep. 104:18-107:8. Plaintiff alleges that he acknowledged his lie, and Mr. Markopoulos told him that this would not be a barrier to his continued employment. *Id.* Plaintiff continued to work for Defendant, and even received a promotion after this conversation.

Accordingly, to the extent Plaintiff was involuntarily separated from his employment, he believes that the stated reason was pretext, and that he was dismissed due to the continued pains in his legs and/or his notice to his supervisor one week prior that he thought he would have to take additional medical leave.

## II.     STANDARD OF REVIEW

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id*. at 248.

When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-moving party. *Id*. at 255; *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citations omitted); see also *Crawford v. Beard*, 2005 U.S. Dist. LEXIS 887, at *5 (E.D. Pa. Jan. 19, 2005) (citing *Big Apple BMW, Inc. v. BMW of N. Am., Inc*., 974 F.2d 1358, 1363 (3d Cir. 1992)). Thus, summary judgment is appropriate if, after reviewing the evidence and making all inferences in favor of the non-moving party, there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.   ANALYSIS

### A.  Disability Discrimination under the Americans with Disabilities Act / Pennsylvania Human Relations Act

The Americans with Disabilities Act ("ADA") prohibits employment discrimination against "a qualified individual on the basis of disability" with regards to "the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a). So, too, does the Pennsylvania Human Relations Act ("PHRA"). 43 P.S. § 955(a).[1]

---

[1] "The PHRA is basically the same as the ADA in relevant respects and Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts." *Rinehimer v. Cemcolift, Inc.*, 292

4

To prevail on a disability discrimination claim a plaintiff must satisfy the burden-shifting test first advanced in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-803 (1973). Thus, Plaintiff must first establish a *prima facie* case of discrimination by demonstrating that 1) he was a disabled person within the meaning of the ADA, 2) he was otherwise qualified for the position he held, and 3) he suffered an adverse employment decision. *See, e.g., Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). If Plaintiff is successful in making these showings, the burden shifts to Defendant to provide a non-discriminatory, legitimate reason for the adverse employment decision. *McDonnell Douglas*, 411 U.S. at 802; *Eastman v. Research Pharm., Inc.*, No. 12-2170, 2013 WL 3949236, at *7 (E.D. Pa. Aug. 1, 2013). If Defendant is able to produce such a reason, Plaintiff must provide evidence that the proffered reason was merely pretext. *Id.*

### a. Plaintiff's Qualification as Disabled

A plaintiff qualifies as disabled under the ADA if "(1) he has a physical or mental impairment that substantially limits one or more of his major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment." 42 U.S.C. § 12102(2). Generally, "[w]hether an individual is substantially limited in a major life activity is a question of fact." *Cohen v. CHLN, Inc.*, No. 10-514, 2011 WL 2713737, at *6 (E.D. Pa. July 13, 2011) (citations omitted).

The ADA was initially construed to mean that a person was "substantially limited" only if she had "an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Manufacturing, Ky., Inc., v. Williams*, 534 U.S. 184, 198 (2002); *see also Sutton v. United Airlines, Inc.*, 527 U.S. 471

F.3d 375, 382 (3d Cir. 2002) (citation omitted). Thus, disposition of an ADA claim generally "applies with equal force to [a] PHRA claim." *Id.* Accordingly, the laws will be analyzed together.

(1999). Such a limited interpretation of the statutory language led Congress to pass the ADA Amendments Act of 2008 ("ADAAA"). In doing so, "Congress expressly rejected the standard that had been embraced by courts stating that the terms substantially and major in the definition of the ADA need to be interpreted strictly to create a demanding standard for qualifying as disabled." *Thomas v. Bala Nursing & Ret. Ctr.*, No. 11-5771, 2012 WL 2581057, at *6 (E.D. Pa. July 3, 2012) (citations and quotations omitted); *see also Estate of Murray v. UHS of Fairmount, Inc.*, No. 10-2561, 2011 WL 5449364, at *6 (E.D. Pa. Nov. 10, 2011) (noting that "substantially limits" is no longer meant to be an onerous standard and finding material issue of disability post ADAAA despite "incredibly sparse" record) (McLaughlin, J.).

Additionally, since the passage of the ADAAA, major life activities include, but are not limited to, "caring for oneself*, performing manual tasks*, seeing, hearing, eating, sleeping, *walking*, standing, *lifting, bending*, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A) (emphasis added). Despite these significant changes to the law, much of Defendant's argument relies on cases which "take place before the ADAAA, and therefore apply a more rigorous interpretation of what counts as a 'substantial limitation.'" *Thomas*, 2012 WL 2581057 (E.D. Pa. July 3, 2012).[2]

---

[2] Additionally, much of Defendant's argument rests on the assumption that Plaintiff's declaration is inadmissible due to its failure to strictly follow the suggested preamble for declarations, pursuant to 28 U.S.C. § 1746(1). While it is perhaps misguided that Plaintiff, who is represented by experienced counsel, failed to simply recite the language from 28 U.S.C. § 1746(1), his declaration still complied with the statute, by making clear, in substantially similar language, that his statement was made under penalty of perjury. *See* Pl.'s Decl. ¶ 1 ("I . . . assert that the information is truthful and accurate. . . . I also understand the penalties associated with perjury and/or providing false information."). Accordingly, to the extent it does not contradict or serve to rehabilitate the deposition testimony that he gave, the declaration is credited as evidence for purposes of the motion.

However, Plaintiff also extensively cites his complaint in support of his response. This is not permissible. A "[c]omplaint is not evidence and thus does not suffice to survive a motion for summary judgment." *Rahman v. Taylor*, No. 10-0367, 2013 WL 1192352, at *4 (D.N.J. Mar. 21, 2013); s*ee also VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 636 (3d Cir. 2007) (recognizing that a "complaint is not

Here, Plaintiff testifies that he suffered pain and had difficulty with both "bending" and "lifting" after his hernia surgery; that he never fully recovered after the hernia surgery; and, that seven months after his surgery he continued to experience some sharp pains when walking or when he bent down for certain periods of time. Pl.'s Decl. ¶¶ 10-12; Pl.'s Dep. 76:12-17, 80:13-21.[3] The pain was strong enough that Plaintiff allegedly anticipated needing additional leave. Pl.'s Decl. 16. Thus, despite what appears to be a fairly limited body of evidence, and pursuant to "the stated intent of the ADAAA" and the "the statute's command to construe 'disability' broadly," *Estate of Murray,* 2011 WL 5449364, at *8, Plaintiff has established for the purposes of summary judgment a material question as to whether he was disabled.

Finally, to the extent a fact-finder credits Plaintiff's testimony regarding his conversation with Mr. Markopoulos about needing to take additional leave for ongoing pain, combined with Plaintiff's need for leave seven months prior, Plaintiff has provided a material issue as to whether he was regarded as disabled.[4] To demonstrate this, Plaintiff again generally relies on his deposition testimony and declaration. It is true that self-serving affidavits and deposition

---

evidence"); *Hayes v. Easterday*, 879 F. Supp. 2d 449, 452, n.1 (E.D. Pa. 2012) ("the complaint is not evidence"). Accordingly, Plaintiff's complaint will not be considered in support his motion.

[3] Plaintiff's suit also alleged ADA and PHRA discrimination on the basis of depression. These counts were orally withdrawn by Plaintiff's counsel at oral argument.

[4] As the Court noted in *Estate of Murray*,

> [t]he ADAAA clarified two points about "regarded as" disability. First, a plaintiff meets the requirement of being "regarded as" disabled if she establishes discrimination "because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity.*"[18] ADAAA § 4(a) (codified at 42 U.S.C. § 12102(3)(A)) (emphasis added). Second, a plaintiff cannot be "regarded as" disabled if the actual or perceived impairment is "transitory and minor," which is defined as one "with an actual or expected duration of 6 months or less."

2011 WL 5449364 at *8.

testimony may be insufficient to survive a motion for summary judgment. *See Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012) (citations omitted). "However, the issue is not whether Plaintiff has relied solely on his own testimony to challenge the Motions, but whether Plaintiff's testimony, when juxtaposed with the other evidence, is sufficient for a rational fact finder to credit Plaintiff's testimony, despite its self-serving nature." *Id.* Upon balance, Plaintiff's testimony is sufficient to credit, and he has established for the purposes of summary judgment a material question as to whether he was regarded as disabled.

**b.   Plaintiff's Qualification to Perform the Essential Functions of the Job**

An individual is otherwise qualified to perform the job in question if such an individual, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42. U.S.C. § 12111(8). Here, there is little dispute that Plaintiff could perform the essential functions of his position.

**c.   The Alleged Adverse Employment Action**

Plaintiff maintains that he was terminated, whereas Defendant maintains that he voluntarily resigned. Because Plaintiff signed a resignation letter, he is largely proceeding under a theory of involuntary resignation. "An employee's resignation will be considered involuntary if: (1) the employer forces the resignation by using coercion or duress, or (2) the employee resigned because the employer deceived or misrepresented a material fact to the employee." *O'Connell v. Cnty. of Northampton*, 79 F. Supp. 2d 529, 533 (E.D. Pa. 1999) (internal citations omitted). To determine whether Plaintiff's resignation was involuntary, the court must look at all the circumstances surrounding Plaintiff's resignation. *Id.*

While Defendant maintains that Plaintiff resigned voluntarily, its argument about the separation is inconsistently made and somewhat inconsistent with its own documents. For

example, while Defendant argues that Plaintiff voluntarily resigned, Defendant also states that "Plaintiff *was being terminated* for lying on his job application about his criminal record." Def.'s Resp. to Pl.'s SOF ¶ 36 (emphasis added). Moreover, given the incident report, BTC 9, which states that Defendant had "no other alternative but to release [Plaintiff]," Plaintiff has clearly presented a triable case that he was involuntarily separated, and thus, the subject an adverse employment action. Accordingly, although his evidence is not strong, Plaintiff has made a *prima facie* case of discrimination.

### d. Whether Defendant's Proffered Reason for Plaintiff's Termination was a Pretext for Discrimination

Under *McDonnell Douglas,* the burden then shifts to Defendant, who must offer a non-discriminatory, legitimate business reason for terminating Plaintiff. If Defendant can produce such a reason, the burden shifts back to Plaintiff to show evidence of pretext. *See McDonnell Douglas*, 411 U.S. 792; *Thomas*, 2012 WL 2581057, at *5 (E.D. Pa. 2012). To the extent there was an adverse employment action, Defendant argues that Plaintiff was terminated for lying on his job application about his criminal record, and/or for other disciplinary issues, such as the fire drill incident. Each reason has some evidentiary support. However, the reasons are somewhat contradictory with each other, and with the claim that Plaintiff simply voluntarily resigned. *See Farrell v. Planters Lifesavers Co*., 206 F.3d 271, 281 (3d Cir. 2000) ("a plaintiff may establish [a causal] connection by showing that the employer gave inconsistent reasons for terminat[ion]").

Plaintiff argues pretext primarily on the basis of his conversation with Mr. Markopoulos years prior, where Mr. Markopoulos allegedly discussed Plaintiff's employment application, including the misrepresentation about his criminal record, and assured Plaintiff that it would not affect his employment. Pl.'s Dep. 106:1-15. If credited, this conversation would cast doubt on the decision by Mr. Markopoulos to terminate Plaintiff for the same reason years later.

9

Mr. Markopoulos is deceased and there are no notes of this conversation. Accordingly, the only source of evidence for the conversation is Plaintiff. Thus, Defendant contends that any statements made by Mr. Markopoulos should be inadmissible pursuant to the "dead man's statute." In fact, the Federal Rules of Evidence have no such rule. Fed. R. Evid. 601, Commentary ("The Dead Man's Acts are surviving traces of the common law disqualification of parties and interested persons. . . .These rules contain no provision of this kind.").[5] Moreover, pursuant to Federal Rule of Evidence 801(d)(2)(D), statements by Mr. Markopoulos are not hearsay. Mr. Markopoulos was a manager for Defendant, and appears to have had the power to hire and fire employees, including Plaintiff. Accordingly, his alleged statement, which touches on the continued viability of Plaintiff's employment, was made by Defendant's "agent or employee on a matter within the scope of that relationship and while it existed," Fed. R. Evid. 801(d)(2)(D), and may be admitted for the purposes of this motion. *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 97 n.8 (3d Cir. 1999); *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 503 (D. Del. 2005).

While a jury will ultimately judge Plaintiff's credibility with regards to these alleged statements, the detail with which he recalled the conversation under cross examination, which was corroborated by the peculiar nature of his employment application, lends some credence to this conversation actually occurring. A reasonable jury could, to the extent it finds Plaintiff credible, find that Mr. Markopoulos made these statements, and thus, find that Defendant's purported concerns with Plaintiff's employment application were pretext.

---

[5] While the Federal Rules do provide the applicability of these sorts of state rules in diversity cases, Fed. R. Evid. 601, this is not a diversity action. Even if it were, the Pennsylvania Dead Man's Statute, 42 Pa. Cons. Stat. Ann. § 5930, is generally concerned with testimony of interested parties in estate proceedings, and is thus inapplicable here. *See Jackson Nat. Life Ins. Co. v. Heyser*, No. 12-5051, 2013 WL 5278240, at *2 (E.D. Pa. Sept. 19, 2013); *see also* Judge S. Michael Yeager, *The Pennsylvania Dead Man's Statute*, 18 Widener L. Rev. 53 (2012).

Defendant's other proffered non-discriminatory reason for terminating Plaintiff is for disciplinary issues, such as cutting a fire alarm wire. In fact, Defendant's own records indicate that while Plaintiff was going to be transferred, he was not actually transferred, and approximately two months later was still working for Defendant. Then, to the extent Plaintiff is to be believed, only after he made a request for accommodation was he quickly terminated. In fact, none of the documents surrounding the termination suggest that the fire-alarm incident was the reason why Plaintiff was terminated. Defendant's internal memorandum on Plaintiff's dismissal only mentions his employment application. Given all inferences in favor of Plaintiff, the fact that he remained on staff for two months after the fire-alarm incident, but was terminated six days after his request for leave, and the inconsistencies of Defendant's proffered explanation, a jury could find that the reason for Plaintiff's termination was his need for leave, not the fire drill incident. *Cf. Cohen*, 2011 WL 2713737 at *9 ("after months of discussions concerning Plaintiff's performance with no official action taken, Plaintiff offers evidence that Defendant . . . replace[d] Plaintiff within hours of [his employer's] receipt of Plaintiff's email requesting medical leave").

Plaintiff's evidence is certainly not extensive. His case relies mostly on his own testimony. However, Defendant's evidence is also fairly bare and inconsistent. Because a reasonable jury could Plaintiff credible and find in his favor, the motion will be denied.

**B. Retaliation Claim**

Plaintiff also alleges that his termination was improper retaliation under the ADA and PHRA. To establish a *prima facie* case of retaliation, Plaintiff must show: "(1) that s/he was engaged in a protected employee activity; (2) that s/he was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) that there

is a causal connection between the protected activity and the adverse action." *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005) (internal citations omitted).

As noted above, a jury could conclude that Plaintiff informed his employer that he would "likely need to go out" on leave. A request to go out on leave, even an informal request, is a request for a reasonable accommodation, and "[r]etaliation under the ADA includes retaliation against an employee for requesting an accommodation." *Hepner v. Thomas Jefferson Univ. Hospitals, Inc.,* No. 12-5443, 2013 WL 2334148, at *7 (E.D. Pa. May 29, 2013) (citing *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010) (quotations omitted); *see also McGinnis v. Wonder Chem. Co.*, No. 95-4384, 1995 WL 756590, at *4 (E.D. Pa. Dec. 21, 1995) (reasonable accommodation requested when employee told supervisor that his pain prevented him from working and employee requested leave under the FMLA); Enforcement Guidance: Reasonable Accommodation & Undue Hardship Under the Americans with Disabilities Act, No. 915.002, 2002 WL 31994335 (E.E.O.C. Guidance Oct. 17, 2002). Accordingly, the evidence could support a finding that Plaintiff was engaged in a protected action.

According to Plaintiff's testimony, one week elapsed between his notice to Defendant and his termination. While there are no bright lines, "[w]here the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality and defeat summary judgment." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007). Thus, to the extent a jury believes Plaintiff's testimony regarding his request for leave, where he identified himself as in continued pain, the close temporal proximity of his request and his subsequent termination very soon thereafter weigh in favor of finding causation. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding that temporal proximity raised an inference of retaliation when adverse action occurred

only two days after the protected activity); *Planters Lifesavers*, 206 F.3d 271 (3d Cir. 2000) (finding that, among other things, "three to four weeks" helped raise an inference of causation). Here, with less than a week separating the alleged protected action and retaliation, along with inconsistent explanations from Defendant, Plaintiff has met his burden.

The remaining prong of the test, pretext, is met for the same reasons as those elaborated in section B, above. Accordingly, the motion will be denied with regards to this count.

### C. Pennsylvania Wrongful Discharge/ Public Policy Claim

Finally, Plaintiff alleges that his termination in connection with seeking worker's compensation benefits amounts to wrongful discharge. This is incorrect, and his claim fails as a matter of law.

"In Pennsylvania, the common-law tort of 'wrongful discharge' is a narrow exception to the general principle that an employer may terminate an employee for any reason, unless restrained by contract or by statute." *Ward v. United Parcel Serv., Inc*., No. 12-2886, 2014 WL 32309, at *3 (E.D. Pa. Jan. 2, 2014) (citing *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 286 (Pa. 2000) (quotations omitted)). Plaintiff relies on *Schick v. Shirey*, a Pennsylvania Supreme Court case which recognized a public policy exception to the presumption of at-will employment when an employee is fired for filing a worker's compensation claim. 716 A.2d 1231, 1232 (Pa. 1998). In fact, *Shick* applies only to at-will employees, and it "did not overrule the well-established law that employees under a collective bargaining agreement cannot maintain a tort action for wrongful discharge." *Harper v. American Red Cross Blood Services*, 153 F. Supp. 2d 719, 721 (E.D. Pa. 2001); *see also Raczkowski v. Empire Kosher Poultry, Inc.*, 2005 WL 1273591, at *3 (M.D. Pa. 2005) (recognizing that at-will employees are uniquely protected "because such employees have no other recourse against

wrongful discharge") (quotations and citations omitted). Here, it is undisputed that Plaintiff was a member of a union that had both a collective bargaining agreement and grievance procedures. Pl.'s Dep. 118:7-8. Accordingly, Plaintiff may not pursue a wrongful discharge claim, and this count will be dismissed.

IV.     **CONCLUSION**

Because there are material facts in dispute, Defendant's motion for summary judgment of Plaintiff's discrimination and retaliation claims will be denied. However, Plaintiff's wrongful discharge claim fails as a matter of law, and will be dismissed.

An appropriate Order follows.